IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOLLY ELDRIDGE-HALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H – 04 – 913 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Defendant filed a Motion for Summary Judgment (Doc. #19). For the following reasons, the Motion is **GRANTED**.

**I.     BACKGROUND**

Plaintiff filed this employment discrimination suit under Title VII, 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., against Defendant City of Houston ("Defendant" or "City"). Plaintiff, an African-American female, states claims for intentional discrimination, disparate treatment, retaliation, and hostile work environment on the basis of race, age, and sex discrimination, and also asserts a state law claim of defamation.

Plaintiff was employed as a Senior Airport Communications Operator ("ACO") in Defendant's Aviation Department ("Department"). In February 2003, a coworker reported that Plaintiff had another employee, Pedro Flores, clock her into work when she was not yet there.[1]

---

[1] This was not the first time Plaintiff was involved in a time-clock violation. In 1998, Plaintiff and Pedro Flores were suspected of clocking in for each other. Plaintiff was warned that employees are not permitted to swipe-in or swipe-out other employees and that such a violation could result in indefinite suspension. Incidentally, Flores is the employee accused of clocking in Plaintiff on this occasion as well.

A thorough internal investigation revealed that on February 6, 2003, Plaintiff had in fact asked Flores to clock her in. Based on evidence obtained from witnesses, the time clock, and the electronic access system (which records the use of Plaintiff's access badge at work), Defendant found that there was sufficient evidence to conclude that Plaintiff violated Department policy by having another employee clock her in.

Pursuant to Civil Service Rules and Regulations, Plaintiff was given an opportunity to explain her actions to the Department Director, Richard Vacar ("Director"). Plaintiff's explanation was unsatisfactory. Due to the seriousness of the offense, the Director recommended indefinite suspension,[2] which is the first step of disciplinary action for falsifying city records. After reviewing the facts of the case, former City of Houston Mayor, Lee P. Brown, indefinitely suspended Plaintiff on December 5, 2003. Plaintiff appealed her indefinite suspension to the Civil Service Commission for the City of Houston ("Commission"). The Commission upheld the indefinite suspension.

While Plaintiff's violation was being investigated, she filed several complaints against fellow employees. She filed a claim with the Office of Inspector General ("OIG") – the central authority to investigate allegations of misconduct made against City employees – stating that her coworkers wrongfully accused her of the time-clock violation. Plaintiff also filed a complaint with the Employee Concerns Review Program ("ECRP"), asserting a number of complaints against her coworkers, none of which pertain to racial harassment. Finally, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation for filing an internal complaint of racial harassment, and stating that she had been discriminated against because of her race.

---

[2] "Indefinite suspension" and "termination" are used interchangeably throughout this opinion.

Plaintiff received a Notice of Right to Sue and filed the present action in state court. Defendant removed the case to federal court and now moves for summary judgment on all of Plaintiff's claims. Plaintiff does not dispute that her claims for age and sex discrimination, as well as her defamation claim, should be dismissed.[3]

## II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c).  "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotation omitted).  Evidence is construed in the light most favorable to the non-moving party.  *Id*.

"[A] complete failure of proof concerning an essential element of [Plaintiff's] case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for Defendant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If Defendant shows that there is a lack of evidence to support Plaintiff's case, Plaintiff "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Kee*, 247 F.3d at 210 (quotation omitted).

---

[3] Defendant argues that Plaintiff's claims for age and sex discrimination should be dismissed because she never alleged age or sex discrimination in her EEOC complaint.  A federal court has no jurisdiction to consider Title VII claims when a party has failed to exhaust administrative remedies.  *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994).  Plaintiff concedes this point.  Defendant argues that Plaintiff's defamation claim should also be dismissed because it is barred by governmental immunity, which has not been waived.  *See* Tex. Civ. Prac. & Rem. § 101.025.  Plaintiff concedes this point as well.

3

**III.    INTENTIONAL DISCRIMINATION AND DISPARATE TREATMENT**

Plaintiff alleges that she was terminated on the basis of her race and that other employees were not terminated for similar time-clock violations.  To survive a motion for summary judgment, Plaintiff must first establish a prima facie case of intentional discrimination by showing:  (1) she belongs to a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or, in the case of disparate treatment, that similarly situated employees were treated more favorably.  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).  "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

Defendant does not dispute that Plaintiff belongs to a protected group, was qualified for her position, and suffered an adverse employment action when she was placed on indefinite suspension.  Defendant argues, however, that Plaintiff cannot show either that she was replaced with a similarly qualified person outside of her protected group, or that similarly situated employees were treated more favorably.

Plaintiff cannot demonstrate that she was replaced by a similarly qualified person who was not a member of her protected group.  During her deposition, Plaintiff admitted that two people hold the position of Senior ACO at Hobby Airport – the position Plaintiff held prior to being terminated – but she does not know which one specifically replaced her.  The two Senior ACOs are Gail Norris and John Shea.  Gail Norris is African-American, and therefore, a member of Plaintiff's protected group.

4

Plaintiff also cannot prove that similarly situated employees were treated more favorably. While Plaintiff does not admit that she committed a time-clock violation, she argues that even if she had and was terminated on that basis, as Defendant contends, she was still treated differently from other employees because white males who committed the same violation were not terminated. Plaintiff's argument is misleading. The example Plaintiff refers to was a situation where a white male had another employee clock him in at work when he was not there.[4] The white male employee was never placed on indefinite suspension because he resigned before he could be discharged. Just like Plaintiff, the white male's alleged violation was being investigated and the recommendation to suspend him was in process. When Defendant confirmed that the white male had committed a time-clock violation, but before the recommendation for suspension was made to the Mayor, the white male resigned. This does not indicate that a similarly situated employee was treated more favorably.

Plaintiff has failed to make a prima facie case of intentional discrimination and disparate treatment because she cannot show that she was replaced with a similarly qualified person who was not a member of her protected group, or that similarly situated employees were treated more favorably.

Plaintiff additionally argues that she was treated differently from other employees because her supervisor, Josette Dishongh, met more often with another employee than she met with Plaintiff; another African-American employee was allowed to comb her hair during work hours while Plaintiff was disciplined for the same action; and another employee was allowed to

---

[4] There was also an investigation into the employee who allegedly clocked the first employee in and the supervisor of the two men, all three employees involved in the incident are white men. No action was taken against the employee accused of clocking in the first employee because there was insufficient evidence against him. Disciplinary action was taken against the supervisor, however, for being too lax on the time-keeping policy. The disciplinary action taken against these two men is irrelevant, however, because they are not similarly situated to Plaintiff because they are not the ones who actually called in and asked another employee to clock them in.

utilize leave time without giving proper notice. Not one of these allegations comes close to constituting an adverse employment action, and therefore cannot be the basis of a prima facie case of intentional discrimination or disparate treatment.

## IV.     RETALIATION

Plaintiff next argues that Defendant unlawfully retaliated against her. To show retaliation under Title VII by circumstantial evidence, Plaintiff must first prove by a preponderance of the evidence that: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse action. *Evans v. Houston,* 246 F.3d 344, 352 (5th Cir. 2001).

### A.     Protected Activity

An employee has engaged in activity protected by Title VII if she has either opposed any practice made an unlawful employment practice by Title VII, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). Plaintiff argues that she engaged in protected activity: (1) in February 2003, when she complained to the OIG that she was being falsely accused of a time-clock violation; (2) in March 2003, when she filed an internal complaint alleging racial harassment against her supervisor; (3) in April 2003, in a complaint regarding her coworkers' conduct, filed with the ECRP; and (4) in July 2003, when she filed an EEOC complaint alleging race discrimination and retaliation.

In February 2003, Plaintiff and Flores reported to the OIG to complain that they were being falsely accused of time-clock violations. Plaintiff stated that she believed she was being targeted by management and was in the process of being terminated for something she did not do. Plaintiff and Flores again reported to the OIG in March 2003, to complain that Flores had

6

been inappropriately encouraged to resign his position while he was on "Injured on Duty" status. Filing a complaint with the OIG regarding these practices does not qualify as Title VII protected activity because the complaint is neither a proceeding under Title VII, nor an opposition of any practice made unlawful by Title VII.

Plaintiff alleges that she filed an internal complaint of racial harassment against Dishongh, and her EEOC complaint in fact states: "On or about March 2003, I filed an internal complaint alleging racial harassment by Ms. Dishongh." Def.'s Mot. for Summ. J. Ex. 8. Filing a racial discrimination complaint using the employer's internal administrative process is clearly protected activity. *See Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001). Defendant, however, does not have any record of such complaint, and Plaintiff has not articulated to whom she made the complaint or by what process.[5]

Plaintiff also filed a claim with the ECRP, stating that her coworkers made false accusations regarding her work ethics and job performance, and that City policy was not being equally applied to all section employees because a coworker received leave time without giving proper advanced notice.[6] The ECRP handles complaints regarding "employee concerns, which do not allege discrimination." Def.'s Mot. for Summ. J. Ex. 9. This complaint was in regards to employee conflict and does not oppose any practice made unlawful by Title VII.

The only protected activity that Plaintiff indisputably engaged in was filing an EEOC complaint, which is sufficient to meet the first prong of her prima facie case of retaliation.

---

[5] As will be discussed later in this opinion, Plaintiff's internal complaint of racial harassment in March 2003 cannot be the basis of her retaliation claim because there is no causal connection between the complaint and her indefinite suspension.

[6] Plaintiff does not allege that she was denied any leave time because of her failure to give advanced notice.

### B.     Adverse Employment Action

Plaintiff suffered an adverse employment action when she was terminated.  She also complains that she was retaliated against when she was given a Performance Improvement Discussion ("PID") by her supervisor, Pamela Bazile, while her coworkers had not been disciplined for doing the same things she had done.[7]  According to Defendant, a PID "is not discipline, but rather a documented conversation with an employee about some aspect of performance or conduct that needs to be improved."  Def.'s Mot. for Summ. J. Ex. 8.  Under Fifth Circuit law, a PID is clearly not an adverse employment action.  *See Felton v. Polles*, 315 F.3d 470, 488 (5th Cir. 2002) (holding that placement on a performance improvement plan is not an adverse employment action).

### C.     Causal Link

Plaintiff engaged in Title VII protected activity and suffered an adverse employment action when she was terminated, but she still must show that there was a causal link between the two.  "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. American Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

Even if Plaintiff could provide evidence that she filed an internal complaint of racial discrimination in March 2003, she has failed to demonstrate a causal link between engaging in this protected activity and being terminated.  Nor can Plaintiff prove a causal link between filing an EEOC complaint in July 2003, and being terminated.  Plaintiff violated Department policy on February 6, 2003.  Her violation was immediately reported and investigated.  Only after the

---

[7] Plaintiff does not elaborate on what she and her coworkers had all done, but for which only she was allegedly disciplined.

investigation was under way did Plaintiff begin to make complaints alleging racial harassment and retaliation. Even though the official decision to indefinitely suspend Plaintiff did not occur until December 2003, the investigative process that resulted in her termination started in February 2003. Plaintiff could not possibly have been retaliated against for complaints that she made after Defendant had already begun to investigate her alleged violation.

## V.     LEGITIMATE NON-DISCRIMINATORY REASON FOR TERMINATION

If Plaintiff could establish a prima facie case of intentional discrimination, disparate treatment, or retaliation, the burden would shift to Defendant to provide a legitimate, non-discriminatory reason for its actions. *See Okoye,* 245 F.3d at 512; *Fierros,* 274 F.3d at 191. If Defendant met this burden, then Plaintiff would bear the ultimate burden of proving that the proffered reasons are a pretext for discrimination, by showing that the adverse employment action would not have occurred "but for" the employee's participation in the protected activity. *See Okoye,* 245 F.3d at 512; *Fierros*, 274 F.3d at 191-92.

Even if Plaintiff had been able to make a prima facie case of intentional discrimination, disparate treatment, or retaliation, which she has not, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant's legitimate reason for terminating Plaintiff eliminates any presumption that the termination was discriminatory. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004) ("If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.").

Plaintiff was accused of stealing city time by having another worker clock in for her when she was not yet at work. After a thorough investigation, Defendant determined that she

9

had in fact engaged in a time-clock violation and terminated her. Defendant's policy is to indefinitely suspend employees who falsify city records, and that is exactly what occurred here. Plaintiff cannot make a prima facie case of intentional discrimination, disparate treatment, or retaliation, let alone meet her ultimate burden of proving that Defendant's legitimate reason for terminating Plaintiff is pretextual. Because of Plaintiff's time-clock violation, she would have been fired whether or not she had filed an EEOC complaint; therefore, she cannot survive summary judgment. *See Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.").

## VI. HOSTILE WORK ENVIRONMENT

Finally, Plaintiff claims that she was subjected to a hostile work environment. To succeed on a claim of hostile work environment, Plaintiff must show that she was subjected to such severe or pervasive discriminatory conduct that it created an objectively hostile work environment. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). A prima facie case consists of five elements: (1) Plaintiff belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Celestine v. Petroleos de Venez., SA*, 266 F.3d 343, 353 (5th Cir. 2001). Harassment affects a term, condition, or privilege of employment only if it is "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Id*. (quoting *Watts v. Kroger*, 170 F.3d 505, 509 (5th Cir. 1999)). In determining whether a hostile environment existed, courts

should consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker*, 214 F.3d at 625 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).

Plaintiff asserts that she was subjected to racial harassment by fellow employees beginning in 1998. In her deposition, Plaintiff explains that one coworker made a comment to her about getting her "big black, [ass];" told her that the only reason she was promoted was because she was black and all of the managers were black; and referred to black employees using the "N" word and "black Bs." Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. A at 50-52. Plaintiff does not allege that these comments were made on a regular basis, rather, she points to specific and isolated instances when these offensive phrases were uttered by a coworker.

Plaintiff claims she protested the treatment to the individual who made the comments, then to her supervisors, and finally to the OIG and EEOC; yet Plaintiff offers no documentation of such complaints. The complaints that Plaintiff filed with OIG and EEOC that are attached as exhibits to Defendant's Motion for Summary Judgment make no reference to racially harassing comments made by her coworkers. Plaintiff did complain about her coworkers to the ECRP, but the complaint does not mention racial harassment.

Plaintiff has not met her burden of showing that her coworkers' racial insults were sufficiently severe to alter the conditions of her employment and create an abusive working environment. While the comments Plaintiff complains of are certainly offensive, they do not amount to an actionable claim under Title VII. *Cf. Indest v. Freeman Decorating*, 164 F.3d 258, 263 (5th Cir. 1999) ("Title VII is not a general civility code for the American workplace."). Plaintiff has not demonstrated that the comments were frequent, physically threatening or

humiliating, or how they unreasonably interfered with her work performance. Even if her supervisors were aware of the comments, the comments did not create an objectively hostile work environment.

### VII.     CONCLUSION

Plaintiff has failed to prove the essential elements of any of her claims against Defendant. Defendant's Motion for Summary Judgment (Doc #19) is thus **GRANTED**.

IT IS SO ORDERED.

SIGNED this 16th day of May, 2005.

*[signature]*

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**